IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROGER MORGAN WALL,           §
TDCJ #1126991,               §
                             §
          Petitioner,        §
                             §
v.                           §          CIVIL ACTION NO. H-09-1283
                             §
RICK THALER, Director,       §
Texas Department of Criminal Justice -  §
Correctional Institutions Division,     §
                             §
          Respondent.[1]     §

## MEMORANDUM AND ORDER

The petitioner, Roger Morgan Wall (TDCJ #1126991), is incarcerated in the Texas

Department of Criminal Justice - Correctional Institutions Division ("TDCJ").  Wall seeks

federal habeas corpus relief under 28 U.S.C. § 2254 from a felony conviction that was

entered against him in state court.  The respondent has answered with a motion for summary

judgment, arguing that Wall is not entitled to relief.  [Doc. # 10].  Wall has not filed a reply,

and his time to do so has expired.  After considering all of the pleadings, the state court

records, and the applicable law, this Court **grants** the respondent's motion for summary

judgment and **dismisses** this case for reasons set forth below.

---

[1]     Rick Thaler has replaced the former respondent, Nathaniel Quarterman, as Director of the Texas Department of Criminal Justice - Correctional Institutions Division.  Therefore, the Court substitutes Thaler as the proper respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.   BACKGROUND

A local grand jury returned an indictment against Wall in cause number 897990, charging him with aggravated assault with a deadly weapon.  In particular, Wall was charged with beating several homeless men with a board, causing two of them to suffer severe injuries.  The State enhanced that indictment with allegations that Wall had at least two prior felony convictions.  A jury in the 334th District Court of Harris County, Texas, found Wall guilty as charged in the indictment.  After finding that the enhancement allegations were true, the same jury sentenced Wall to serve thirty-five years' imprisonment.

On direct appeal, Wall complained that the prosecutor engaged in misconduct by making improper comments during closing argument.  Wall argued further that certain out-of-court statements (*i.e.*, hearsay) by one of the victims was admitted in violation of the Sixth Amendment Confrontation Clause.  Before addressing the substance of Wall's allegations, the intermediate court of appeals summarized the facts underlying the offense and the pertinent claims:

> On December 31, 2001, a group of men gathered at an abandoned gas station to celebrate the approach of the new year.  [Wall], who sometimes drank with these men, wandered over to visit with them.  One of the victims of the assault, Donald Norman, later provided a statement to police detailing the events. According to Norman, [Wall] began saying how much he hated "niggers and Mexicans."  Norman responded that he loved all races and that he served his country for all races.  [Wall] retorted angrily that Norman was a "nigger lover," and then walked a few feet away to pick up a wooden board.
>
> [Wall] then attacked several individuals with the board, causing all to be injured, two so severely that hospitalization was required.  Norman was one of the victims requiring hospitalization.  While at the hospital, Deputy Luis G.

Figueroa questioned Norman about the events.  Norman answered Figueroa's questions and identified [Wall] as the perpetrator of the assault.

Norman was unavailable to testify at trial. Instead, the State called Deputy Figueroa to testify as to what Norman disclosed to him in response to Figueroa's questioning at the hospital.  [Wall] objected to the admission of this evidence claiming that it was inadmissible hearsay.  However, the trial court allowed Norman's statements to be admitted into evidence under the excited utterance exception to the hearsay rule.  *See* TEX. R. EVID. 803(2).

*Wall v. State*, 143 S.W.3d 846, 848 (Tex. App. — Corpus Christi 2004).  The court of appeals found that Wall's waived his prosecutorial-misconduct claim and that, although the victim's hearsay statements were admitted in error, any violation of the Confrontation Clause was harmless for purposes of determining Wall's guilt.  *See id.* at 850, 852-53.  Accordingly, the court of appeals affirmed the conviction.

The Texas Court of Criminal Appeals granted a petition for discretionary review on the Confrontation-Clause issue and, agreeing that any error was harmless, affirmed the conviction.  *See Wall v. State*, 184 S.W.3d 730 (Tex. Crim. App. 2006).  However, the Court of Criminal Appeals remanded the case for additional consideration of Wall's Confrontation-Clause claim to determine whether the error was also harmless for purposes of determining Wall's punishment.  *See Wall*, 184 S.W.3d at 746-47. As discussed in more detail below, the intermediate court of appeals concluded that any error was harmless beyond a reasonable doubt at the punishment phase of the trial in light of the overwhelming evidence of Wall's guilt, the unprovoked nature of the assault, and his insensitivity to the victims.  *See Wall v. State*, 286 S.W.3d 372 (Tex. App. — Corpus Christi 2008).  The Texas Court of Criminal Appeals refused Wall's petition for discretionary review from that decision.

3

Wall challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.  In that proceeding, Wall complained that (1) the trial court erred by admitting the victim's hearsay statements in violation of his rights under the Confrontation Clause; (2) the prosecutor engaged in misconduct by introducing evidence that the assault was fueled by racial animus; and (3) Wall was denied effective assistance of counsel at trial because his attorney failed to object to improper argument by the prosecutor during summation.  The state habeas corpus court entered findings of fact and concluded that Wall's second claim was procedurally barred. The state court concluded that Wall was not otherwise entitled to relief. The Texas Court of Criminal Appeals agreed and denied relief on February 18, 2009, without a written order, based on the habeas corpus court's findings.  *See Ex parte Wall*, No. 70,893-02.[2]

Wall now seeks a federal writ of habeas corpus to challenge his state court conviction under 28 U.S.C. § 2254. [Doc. # 1].  Wall presents essentially the same claims that were raised and rejected on state habeas corpus review.  The respondent has filed a motion for summary judgment, arguing that Wall fails to show that he is entitled to federal habeas corpus relief.  [Doc. # 10].  The parties' contentions are addressed below under the applicable federal habeas corpus standard of review.

## II.    STANDARD OF REVIEW

---

[2]      Wall raised similar claims in his first state habeas application, which was dismissed as premature because his direct appeal was still pending. *See Ex parte Wall*, No. 70,893-01.

4

The respondent's motion for summary judgment must be determined in compliance with the federal habeas corpus statutes.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA was enacted, at least in part, to ensure comity, finality, and deference to state court determinations by limiting the scope of collateral review and raising the standard for federal habeas relief.  *See Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (citations omitted).  As the Supreme Court has explained, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).

The federal habeas corpus scheme of review requires petitioners for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication.  *See* 28 U.S.C. § 2254(b).  "To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal claim to the highest state court."  *Ries v. Quarterman*, 522 F.3d 517, 523 (5th Cir. 2008).  If a claim has not been adjudicated

5

on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state-law ground. *Cone v. Bell*, — U.S. —, 129 S. Ct. 1769, 1780 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Cone*, — U.S. —, 129 S. Ct. at 1780 (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights") (quoting *Coleman*, 501 U.S. at 732).

To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies. For claims adjudicated on the merits, the AEDPA standard provides that a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009). A state court unreasonably applies clearly

established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)), *cert. denied*, — U.S. —, 130 S. Ct. 367 (2009).

The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 7 (2002). Likewise, a federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

A state court's findings and conclusions are entitled to deference unless the petitioner shows that they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Buntion v.*

*Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), *cert. denied*, — U.S. —, 129 S. Ct. 1306 (2009).  A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).  The petitioner's claims in this case are addressed below under the deferential AEDPA standard, beginning with his claim under the Sixth Amendment Confrontation Clause.

## III.   DISCUSSION

### A.   Confrontation Clause

In his primary claim, Wall contends that the trial court erred by admitting out-of-court statements made by one of the victims, Donald Norman, who did not testify at trial. According to the record, Norman told police that Wall directed a series of racial epithets towards the victims as he assaulted them.  The record reflects that Norman's hearsay remarks to police were admitted at trial under the "excited-utterance" exception to the prohibition against hearsay.  Wall insists that, because he was unable to cross-examine Norman about his statement to police, the trial court admitted the evidence in violation of the Sixth Amendment Confrontation Clause.

The Confrontation Clause found in the Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.  The right to

8

confrontation bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify" and the defendant had "a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  Thus, the Sixth Amendment guarantees a defendant's right to rebut the State's evidence through cross-examination.  *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005) (citations omitted)).

Wall's Confrontation-Clause claim was considered at length on direct appeal and on discretionary review by the Texas Court of Criminal Appeals, which set forth the relevant facts and the objectionable testimony as follows:

> On December 31, 2001, a group of homeless men gathered to drink and talk at an abandoned Shell station off the feeder road of I-10 in Channelview, Texas.  [Wall], who lived in a nearby apartment and who knew some of the men, joined the group.  At some point during the afternoon, [Wall] picked up a board and beat several of the men.  Two of those men, Samuel Pierce and Donald Norman, were severely injured and taken by ambulance to a nearby hospital.  While in the emergency room, both were questioned by Deputy Luis Figueroa and photographed by Deputy Kirk Willis.

> [Wall] was charged with the aggravated assault of Samuel Pierce.  At trial, Mr. Pierce testified that on New Year's Eve afternoon he was at the Shell station drinking with some people, including [Wall], whom he knew only as "Roger."  Then "[a] bottle got broke against the wall and things started being said."  Mr. Pierce said that [Wall] was behind him, and the next thing he knew he was hit in the head a couple of times with a two-by-four board.  When he put up his arm in self defense, [Wall] hit his arm.  Mr. Pierce's injuries included a cut on his head that required stitches, a fractured nose, and a broken arm that required "a lot of surgeries to put it back together."  Mr. Pierce said that, as far as he knew, nobody had said or done anything to [Wall] to provoke the beating.

> Donald Norman did not testify. Instead, the State called Deputy Figueroa to relate what Mr. Norman told him in response to the deputy's

questioning at the hospital.  [Wall] objected to this evidence, claiming that it was inadmissible hearsay and its admission violated his right to confrontation. The trial court admitted Mr. Norman's out-of-court statements under the excited-utterance exception to the hearsay rule.[3]

Deputy Figueroa recounted his interview of Mr. Norman:

Q:     When you said that Mr. Norman also talked about the defendant, did he give you a name or description of the individual that assaulted him?

A:     Yes, ma'am, he did.

Q:     What name was he able to give you?

A:     He said he knew him as Roger and did not know his last name. Just, I know him as Roger. And he stated he was approximately 6 feet in height, bald.

* * *

Q:     Was Mr. Norman able to give you a description of the man he knew as Roger?

A:     Yes, he was.

Q:     What was that description?

A:     White male, 6 feet in height, bald, with tattoos all over him.

Q:     Okay. Was Mr. Norman able to tell you the events or how the assault took place?

A:     Yes, he was.

---

[3]     *See* TEX. R. EVID. 803(2), which reads, "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule, regardless of whether the declarant testifies as a witness.

10

Q:    What did he tell you?

A:    He told me they were drinking and-Mr. Pierce, Mr. Thomas and the defendant were drinking at the old gas station when the defendant said, "I hate niggers, I hate Mexicans."

Q:    What did-what happened after that?

A:    Mr. Norman told me that he told the defendant, "I like all races."

* * *

Q:    Go ahead.

A:    Mr. Norman stated he told the defendant, "I like all races and I served this country for all races."

Mr. Norman then told me that the defendant got angry and said, "You're a nigger lover," at which time he walked over to the bed of a truck and retrieved a club and came back to him and started to assault him, began assaulting him with a club.

Q:    Was there anything else that Mr. Norman told you about the assault?

A:    He mentioned that the incident happened very fast and he didn't know what to do and just went on and gave the descriptors and said he only knew him as Roger.

The jury also heard testimony from two bystander eyewitnesses, Cinellia Fry (who saw the assault while stopped at a nearby red light), and Jerry Hunter (who watched the assault from a McDonald's across the street), as well as other responding deputies, none of whom testified about the racially charged conversation.

*Wall v. State*, 184 S.W.3d 730, 732-34 (Tex. Crim. App. 2006) (footnote in original).  The

Texas Court of Appeals found that Norman's out-of-court statements were properly admitted

under the excited-utterance exception to the hearsay rule. *See id.* at 745.  The Court of Criminal Appeals noted, however, that the statements were testimonial in nature, that Norman was not available to testify at trial, and that Wall had no prior opportunity for cross-examination.  *See id.*  As such, the Court of Criminal Appeals held that Norman's statements were admitted in violation of the Confrontation Clause found in the Sixth Amendment of the United States Constitution.  *Id.*

After finding that a constitutional violation occurred, the Texas Court of Criminal Appeals referenced portions of the intermediate appellate court's decision, which held that the error was harmless as a matter of law because it did not contribute to Wall's conviction:

> The State presented three witnesses, each of whom testified that the defendant, unprovoked, struck several victims with a club/stick/board.  First, Cinellia Fry testified that while she was stopped at a red light adjacent to the scene of the crime, she saw [Wall] grab a stick and viciously attack several unarmed men.   Second, Jerry Hunter testified that he was sitting in his car with his family at the McDonald's across the street from the scene, approximately 100 to 150 feet away.  Hunter stated that he saw some men arguing, and that the [Wall] walked over to a pick-up truck, picked up a club, and attacked several men.  Finally, Samuel Pierce, one of the victims of the attack and an acquaintance of [Wall], testified that he was assaulted, identified his attacker as [Wall], and stated that he was hit several times with a board.
>
> The defense presented three witnesses. Their testimony detailed the events after the assault, when they arrived at the abandoned gas station.  None of the three testified as to what actually occurred between the victims and [Wall].
>
> Thus, of the witnesses testifying at trial, those who actually witnessed the crime testified that [Wall] was the attacker.  Moreover, one of those witnesses was an acquaintance of [Wall] and identified [Wall] as the attacker.  The evidence overwhelmingly establishes [Wall]'s guilt, even disregarding the erroneously admitted evidence.   The testimony establishes that [Wall] intentionally caused physical contact with another that resulted in serious

> bodily injury, while knowing that the victims would regard the contact as
> offensive or provocative, as required by the Texas Penal Code . . . .
> Accordingly, we hold that the error committed by the trial court was not
> harmful . . .

*Wall*, 184 S.W.3d at 745-46 (quoting *Wall v. State*, 143 S.W.3d at 852-53). Based on this record, the Court of Criminal Appeals agreed that "the evidence of [Wall's] guilt was overwhelming and the out-of-court statement by Mr. Norman added nothing to that evidence nor was it at all likely to sway a jury from a state of non-persuasion to persuasion of his guilt." *Id.* at 746. The Court of Criminal Appeals held, therefore, that the error was harmless in that respect. *Id.* The Court of Criminal Appeals remanded the case for additional consideration, limited to the question of whether the Confrontation Clause violation — which featured statements of a racially charged, bigoted nature — was harmless where Wall's punishment was concerned. *Id.*

On remand, the intermediate court of appeals concluded that the error made no contribution to Wall's punishment:

> In the instant case, the source and nature of the error were the trial
> court's erroneous admission of Norman's custodial statement through Deputy
> Figueroa. Norman's statement complemented the testimony of three other
> witnesses, each of whom testified that [Wall], unprovoked, struck several
> victims with what was described as being either a club, stick, or board; it also
> provided the State's only theory as to [Wall]'s motivation for the assault.

> The State did not emphasize the testimony in question; it made no
> attempt to portray [Wall] as a racist. Furthermore, at the time the error was
> committed, "'the case law in this nascent field [was] muddled as to whether

excited utterances may or may not be classified as testimonial hearsay.'"[4]  The court of criminal appeals has since unequivocally held that a testimonial "statement that also qualifies as an excited utterance exception under the Texas hearsay rule does not alter its testimonial nature."[5]  In light of this holding, and because our harmless error determination is guided by the specific facts of this case, we do not believe that declaring the error harmless would encourage the State to repeat the error with impunity.

*Wall v. State*, 286 S.W.3d 372, 375 (Tex. App. — Corpus Christi 2008, pet. ref'd).  The court

of appeals then compared the evidence against Wall with another case in which erroneously

admitted evidence was found harmless in terms of assessing the defendant's punishment.

*See Wall*, 286 S.W.3d at 375-76 (discussing *Epps v. State*, 24 S.W.3d 872 (Tex. App. —

Corpus Christi 2000, pet. ref'd), where evidence showed that the defendant routinely used

"extremely profane words" to reduce people "to a subhuman level" and appeared to have an

"extreme lack of remorse") .  The appellate court noted that Wall did not receive an excessive

sentence in light of his status as a habitual offender, the overwhelming evidence of guilt, and

the vicious nature of his crime:

> In the instant case, [Wall]'s punishment was governed by section 12.42 of the penal code, which sets out punishment ranges for repeat and habitual felony offenders.[6]  The jury was free to assess punishment anywhere between 25 years to life in prison.   [Wall], who pleaded "true" to his previous

---

[4]     *Wall*, 184 S.W.3d at 740 (quoting *United States v. Brito*, 427 F.3d 53, 60 (1st Cir. 2005)).

[5]     *Id*. at 745.

[6]     *See* Tex. Penal Code Ann. § 12.42 (Vernon 2003) ("[I]f it is shown on the trial of a felony offense . . . that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the institutional division of the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.").

14

convictions for burglary of a motor vehicle and injury to a child, received a 35 year sentence.

As in [*Epps v. State*, 24 S.W.3d 872 (Tex. App. — Corpus Christi 2000, pet. ref'd)], the jury in this case was shown overwhelming evidence of [Wall]'s guilt and his insensitivity to the victims of his crime. Multiple witnesses testified that it appeared as if [Wall] committed the assault without provocation. One witness, Jerry Hunter, testified to seeing [Wall] assault five individuals. He stated that he saw [Wall] and five other individuals engaged in what appeared to be an argument. [Wall] grabbed what appeared to be a two-by-four board and used it to strike the head of an individual who was standing; [Wall] struck the individual again after he fell to the floor. [Wall] struck a second individual in the head, breaking the board in half in the process and seemingly knocking that person unconscious. A third individual, who was on crutches and had one leg, was struck by [Wall], presumably with his hands, and pushed to the floor. [Wall] then turned his attention to two other individuals who were sitting; [Wall] punched and kicked them, striking their heads and upper chests. The individuals attacked were described as being "a lot smaller" physically than [Wall], and appearing "much older" in age. Hunter also stated that during the attack, it appeared as if the assaulted individuals were trying to "calm the situation," "get the situation to stop," and back away from [Wall]. Consequently, in light of the overwhelming evidence of [Wall]'s guilt and insensitivity to the victims of his crime, we find that any possible racial bias that was provoked by Deputy Figueroa's testimony was harmless.[7]  The probable impact of this erroneously admitted testimony on the jury was minimal, if any.

*Wall*, 286 S.W.3d at 376 (footnote in original).  Thus, the appellate court concluded that the admission of the complained-of evidence was harmless as a matter of law where Wall's punishment was concerned.  *Id.* at 376 (citing Tex. R. App. P. 44.2(a)).

Wall does not dispute any of the facts relied upon by the state courts and they are presumed correct for purposes of federal habeas corpus review.  *See* 28 U.S.C. § 2254(e)(1).  Instead, Wall contends that the state court erred by holding that the violation was harmless

---

[7]     *See Epps*, 24 S.W.3d at 878.

because violations of the Confrontation Clause are harmful "ALL OF THE TIME." [Doc. # 2, *Memorandum*, at 6] (emphasis in original). Wall is mistaken because, as the Texas courts correctly observed, it is well established that violations of the Confrontation Clause are amenable to harmless error review. In that respect, any violation of the Confrontation Clause is subject to harmless error review, which may include consideration of a host of factors, such as the presence or absence of corroborating evidence and "the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Here, both the intermediate appellate court and the Texas Court of Criminal Appeals determined that the Confrontation Clause violation at issue in Wall's case, namely, the erroneous admission of an out-of-court statement made by a non-testifying victim, was harmless beyond a reasonable doubt under the analysis found in *Chapman v. California*, 386 U.S. 18 (1967). *See Wall,* 143 S.W.3d at 851-52; *Wall*, 184 S.W.3d at 746.

As outlined above, to prevail on federal habeas corpus review Wall must show that the state court's decision was "contrary to" clearly established federal law. 28 U.S.C. § 2254(d)(1). Alternatively, Wall may prevail by showing that the Texas Court of Criminal Appeals's decision is an "unreasonable application" of federal law. 28 U.S.C. § 2254(d)(1). Wall does not cite any contrary authority or show that the Texas Court of Criminal Appeals erred by applying an incorrect standard and he further fails to demonstrate that this precedent was unreasonably applied in his case. As the Texas courts found, the evidence of Wall's guilt was "overwhelming" and the erroneously admitted out-of-court statement by Mr. Norman "added nothing" to that evidence. *See Wall*, 184 S.W.3d at 746. Likewise, the

16

Texas courts found that the error did not contribute to the punishment imposed. *See Wall*, 286 S.W.3d at 376. Under these findings, the error qualified as harmless under the *Chapman* test. *See Harrington v. California*, 395 U.S. 250, 254 (1969) (applying *Chapman* to Confrontation Clause error in which the trial court had admitted the confessions of two non-testifying co-defendants); *United States v. Harper*, 527 F.3d 396, 400-01 (5th Cir. 2008) (addressing a claim under *Crawford v. Washington*, 541 U.S. 36 (2004) and noting that alleged violations of the Confrontation Clause are subject to harmless error analysis). Wall does not show otherwise and he has not established that the state court's ultimate decision to deny relief is contrary to or involves an unreasonable application of clearly established Supreme Court precedent for purposes of obtaining relief under 28 U.S.C. § 2254(d)(1).

More importantly, an independent review of the evidence, which is summarized above, shows that the State's case against Wall was strong even without the hearsay statement made by the non-testifying victim. This was not a one-eyewitness case; rather, there was compelling testimony from another victim (Samuel Pierce) and others who witnessed the incident. Wall does not dispute his guilt or contest any of the facts admitted at trial. Thus, Wall does not show that his conviction or his punishment was tainted by constitutional error that had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding that, on federal habeas corpus review under 28 U.S.C. § 2254, the *Brecht* standard of harmless error applies whether or not the state appellate court conducted a harmlessness review under *Chapman*). Accordingly, this Court concludes that

17

the error was harmless and that Wall is not entitled to relief on federal habeas corpus review on this lack of confrontation grounds.

### B. Prosecutorial Misconduct — Procedural Default

Wall, who describes himself as "Anglo," complains that he was denied due process because the prosecutor injected the trial with evidence of racial bias. [Doc. # 2, *Memorandum*, at 3]. Pointing to the above-referenced hearsay statements attributed to Donald Norman, Wall contends that the prosecutor violated his constitutional rights by attempting to show that Wall attacked the victims because he "hated niggers [and] Mexicans." [*Id.*]. Wall maintains, therefore, that the prosecutor engaged in misconduct by improperly attempting to show that Wall's offense was motivated by racial animus. [*Id.* at 3-5].

The state habeas corpus court found that Wall waived this "record claim" by failing to present it on direct appeal. *See Ex parte Wall*, No. 70,893-02 at 49 (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996)). The record confirms that, although he raised an issue of prosecutorial misconduct concerning certain arguments made during summation, Wall did not present his allegations concerning "racial bias" on direct appeal. The Fifth Circuit has found that waiver of this kind is an adequate state rule for purposes of imposing a procedural default. *See Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004). The respondent argues, therefore, that federal review of this claim is barred from habeas corpus review by the doctrine of procedural default.

Wall has not filed a response to the summary judgment motion and he does not dispute that a procedural default occurred.  Where a petitioner has procedurally defaulted a claim in state court, habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   In the non-capital context, the fundamental miscarriage of justice exception is limited to circumstances in which the petitioner can show that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quotation omitted).  Because Wall does not claim to be actually innocent, he does not demonstrate that the fundamental-miscarriage-of-justice exception applies in this case.  The record does not otherwise disclose cause for the default or actual prejudice.[8] Absent a showing of cause and actual prejudice, Wall's claim is barred by the doctrine of procedural default.  The respondent is entitled to summary judgment on this claim.

---

[8]     The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).  Constitutionally ineffective assistance of counsel, in the form of failure to raise issues on appeal, may operate as cause for procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488-92 (1986).  Wall does not raise a claim of ineffective assistance against his appellate attorney and he does not otherwise allege grounds for cause. Although Wall represents himself on habeas review, his *pro se* status is not cause for a procedural default. *See Saahir v. Collins*, 956 F.2d 115 (5th Cir. 1992).

### C.      Ineffective Assistance of Counsel

Wall complains that the prosecutor made the several improper comments during her closing argument at the punishment phase of the trial when she argued that, based on his lengthy criminal record, a life sentence was the only way to prevent Wall from one day taking a life.  Wall insists that the argument was improper, but that his counsel failed to raise an adequate objection.  [Doc. # 2, at 8-9].  As a result, the intermediate court of appeals found that Wall failed to preserve error for purposes of raising a prosecutorial-misconduct claim on appeal.  *See Wall v. State*, 143 S.W.3d 846, 849 (Tex. App. — Corpus Christi 2004).  Wall contends, therefore, that he was denied effective assistance of counsel during the punishment phase of the trial.  The state habeas corpus court rejected this claim, finding that Wall failed to demonstrate a constitutional violation.  *See Ex parte Wall*, No. 70,893-02 at 49-50.

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the right to have the assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings,

it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See id.* at 687-88. To demonstrate deficient performance on his counsel's part, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That is, the defendant must overcome the presumption that, under the circumstances, "the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004).

Deficient performance, standing alone, is not sufficient to prevail under *Strickland*. Once a petitioner establishes error by his defense counsel, then he must still demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Id.* Where the deficiency occurred in the state punishment context, "the relevant inquiry is whether, absent counsel's errors, there is a reasonable probability that the

21

defendant's sentence would have been 'significantly less harsh,' . . . taking into account 'such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.'" *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (quoting *Spriggs v. Collins*, 993 F.2d 85, 88-89 (5th Cir. 1993)) and *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)). Wall's claim (that his defense counsel was deficient by failing to raise an adequate objection during the punishment phase of the trial) is discussed below to determine whether he satisfies the two-prong *Strickland* test.

In this instance, Wall was convicted of aggravated assault with a deadly weapon. The indictment alleged that Wall had two prior felony convictions, for burglary of a motor vehicle on August 20, 1993 (cause number 602460), and for injury to a child on October 18, 1999 (cause number 817045).  *See Ex parte Wall*, No. 70,893-02 at 59.  Wall conceded at trial that the enhancement allegations were "true."  *Court Reporter's Record*, vol. 7, at 3-5.  Wall also stipulated that he had a lengthy criminal record, which included several other assaults: assault in cause number 8901229 on January 12, 1989; assault in cause number 9112970 on April 24, 1991; assault in cause number 9112010 on April 24, 1991; assault in cause number 9546572 on November 2, 1995; possession of marijuana in cause number 9539578 on November 2, 1995; theft in cause number 9610298, on March 7, 1996; assault in cause number 948279, on December 8, 1998; possession of marijuana in cause number 9827442

on October 30, 1998.  *See id.* at 5-7.  As a habitual felon, Wall faced a range of punishment

from 25 to 99 years or life imprisonment.  *See* TEX. PENAL CODE § 12.42(d).

Wall complains that his attorney failed to properly object to remarks made by the

prosecutor at the close of the punishment phase of the trial, when she asked for a life

sentence.  The record shows that, during her summation the prosecutor outlined the purposes

of punishment in the criminal justice system, including the goal of deterring crime.  *See*

*Court Reporter's Record*, vol. 7, at 67-68.  She argued that a minimum sentence of 25 years

was inappropriate in light of the unprovoked nature of the attack, the vulnerability of the

victims, and Wall's lack of remorse.  *Id.* at 70.  Noting that Wall's criminal record reflected

a pattern of escalating violence, the prosecutor made the following plea for the maximum

sentence of life in prison:

> STATE:    I'm going to submit to you that *the only thing that is going to stop someone from getting killed possibly in the future by this man who is getting more serious instead of less, is if you give him life.*  That is the only thing that is going to stop him.  That is what is appropriate for what he did.  It is an appropriate sentence to punish him for the offense hd did now and taking into consideration what he's done in the past.
>
>                   * * *
>
>     . . . He's getting more serious.  We go from misdemeanor assaults to the injury to a child, then to this aggravated assault.  What is next?  *Literally, does he have to murder somebody for us to decide that he does not need to be out in society*?  He will do it again.  And the question is:

> Are you going to let him?  Are you going to let
> him do it again?  And when?

*Court Reporter's Record*, vol. 7, at 70-71 (emphasis added).  Defense counsel did not raise

an objection to these portions of the prosecutor's argument.  The record shows that the

prosecutor made one more request for a life sentence during her closing statement, which

caused defense counsel to object:

> STATE:   So, what I'm asking you, what I'm begging you,
> we've got to take him off the street because
> anything short of life will not stop him.  *And if
> you don't give him life, he might take a life.*

> DEFENSE:   Objection, your Honor.   That is absolutely
> impermissible final argument right there, to tell
> the jury that the defendant is going to commit a
> crime of murder.   What she said in her final
> argument that is prejudicial argument,
> impermissible argument under the law.

> COURT:   That will be overruled.

*Court Reporter's Record*, vol. 7, at 71-72 (emphasis added).  On direct appeal, Wall argued

that the prosecutor's request for a life sentence was improper argument.  The court of appeals

held that, because trial counsel did not object each time the prosecutor asked for a life

sentence to deter the possibility that Wall might commit a more violent outcome, counsel

failed to preserve error for appeal regarding the propriety of the prosecutor's argument.  *See*

*Wall v. State*, 143 S.W.3d 846, 849 (Tex. App. — Corpus Christi 2004).  Wall insists,

therefore, that he was harmed as a result of his trial counsel's deficient failure to object.

Wall's defense counsel, Garland D. McInnis, Jr., provided an affidavit to the state habeas corpus court in response to Wall's allegations of deficient performance. In that affidavit, McInnis explained that he did not object repeatedly during the prosecutor's argument because, based on his experience, he did not believe that his objection would be sustained:

> Now, as to the punishment argument, prosecutors are usually given wide latitude to make a plea [for] law enforcement. The prosecutor . . . made an argument that is commonly called the graduation speech. This is an effective argument usually construed as a plea [for] law enforcement. A prosecutor will employ this technique to suggest that a defendant will commit similar crimes in the future if not constrained by a long prison sentence. [The prosecutor] employed this technique in a traditional way in a short argument. However, toward the end of her argument she injected a personal element to the graduation [speech] technique. She said 'I beg you . . .' to the jury, thereby adding her personal desires to the general plea [for] law enforcement. At that point I objected to her entire argument as having been improper — she had crossed the line.

*Ex parte Wall*, No. 70,893-02 at 44. In addition, McInnis explained that he did not object repeatedly because he did not want to alienate the jury. *See id*. McInnis noted further that the jury was persuaded in the end to give a sentence toward the low end of the applicable punishment range, meting out a prison term of 35 years rather than the life sentence that the prosecutor requested. *See id*. at 44-45.

The state habeas corpus court found that the affidavit provided by McInnis was "true and credible," and that, taken together with the trial court record, Wall failed to show that he was denied effective assistance of counsel under the governing legal standard. *Ex parte Wall*, No. 70,893-02 at 49 (citing *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App.

2002); *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  In particular, the state habeas corpus court found that McInnis did not object promptly to the prosecutor's comments for all three reasons outlined in his affidavit:  (1) her argument was "typically construed as a plea for law enforcement"; (2) the argument was one he had traditionally seen and was kept short; and (3) he was concerned about objecting too often and did not want the jury to see him as "obstructionist."  *Ex parte Wall*, No. 70,893-02 at 49-50.  The state habeas corpus court noted that McInnis did raise a prompt objection once the prosecutor injected a personal request to the jury, by using the words "I beg of you . . .," because at that point counsel believed that the prosecutor had "crossed the line" into impermissible argument.  *Id.* at 50.  Based on this record, the state habeas corpus court found that Wall failed to show that his counsel's actions with respect to his objections during closing argument were unreasonable or that but for the alleged unprofessional errors, there was a reasonable probability that the result of the proceeding would have been any different. *Id.*  Thus, the state court found that McInnis was not deficient and that Wall failed to establish actual prejudice. *Id.*  The Texas Court of Criminal Appeals agreed with the state habeas corpus court's ultimate conclusion that Wall was not denied effective assistance of counsel at trial and denied his habeas corpus application without further comment.

The state court's decision is supported by the record in this instance. Wall presents nothing that would call into question the state court's fact findings or credibility determinations, which are entitled to the presumption of correctness on federal habeas

review.  *See* 28 U.S.C. § 2254(e)(1).  Wall does not show that his counsel had a valid objection to make.  In that respect, to the extent that the prosecutor's comments could be construed as a plea for law enforcement, Wall fails to show that her comments exceeded the boundaries of acceptable argument under Texas law.  *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) ("Jury argument [in Texas] is appropriate if it falls within one of the following: (1) a summation of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to argument of opposing counsel; and (4) a plea for law enforcement.").

Likewise, as defense counsel explained in his affidavit, the decision to avoid making repeated objections during closing argument was strategic.  Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review.  *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight").  A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).  It is well established in this circuit that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

27

Wall fails to show that his counsel's strategy was unsound.  As noted above, Wall faced a potential punishment range of 25 years to a maximum of life in prison.  The jury ultimately disregarded the prosecutor's repeated request for a life sentence and imposed a term of 35 years, which is toward the low end of the applicable range of punishment.  In light of his substantial criminal record of violent offenses and the evidence admitted in connection with the aggravated assault, which involved an unprovoked, vicious attack on five homeless men, Wall fails to show that his sentence would have been significantly less if his counsel had objected.  Accordingly, even assuming that his counsel's performance was deficient, Wall does not establish the requisite prejudice.  *Dale*, 553 F.3d at 880; *Spriggs v. Collins*, 993 F.2d at 88-89.

Under these circumstances, Wall does not show that he was denied effective assistance of counsel or establish that his trial was tainted by a constitutional violation.  More importantly, Wall fails to demonstrate that the state court's decision to reject his ineffective-assistance claim was contrary to, or involved an unreasonable application of, the well-settled *Strickland* standard.  Accordingly, Wall is not entitled to relief on this issue.  Because Wall has failed to demonstrate a valid claim for relief in this case, the respondent is entitled to summary judgment.

## IV.    CERTIFICATE OF APPEALABILITY

The habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, which requires a certificate of appealability before an appeal may proceed.  *See Hallmark v. Johnson*, 118

F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not

debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a certificate of appealability will not issue.

**V.      CONCLUSION AND ORDER**

Based on the foregoing, the court **ORDERS** as follows:

1.      The respondent's motion for summary judgment [Doc. # 10] is **GRANTED**.

2.      The petition for a writ of habeas corpus [Doc. # 1] is **DENIED**, and this case is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on April 16, 2010.

Nancy F. Atlas
United States District Judge